UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHELLEY CHANDLER                           NO. 5:06CV266

VERSUS                                     JUDGE HICKS

LA QUINTA INNS, INC., ROB COWEN,           MAG. JUDGE HORNSBY
AND CHARLES JOHNSON

**MEMORANDUM RULING**

Before the Court is a motion for summary judgment filed by the defendants, La Quinta Inns, Inc., Rob Cowan and Charles Johnson [Doc. No. 22]. Plaintiff Shelley Chandler brings claims against her former employer, La Quinta Inn, Inc. ("La Quinta"), pursuant to the Family and Medical Leave Act ("FMLA") and against Cowan and Johnson under state tort law. While Chandler opposes the motion to dismiss her FMLA claims, she does not oppose summary judgment on the remaining claims. See Doc. No. 24-1, p. 7. For the reasons which follow, the defendants' motion for summary judgment is **GRANTED**.

**FACTUAL BACKGROUND**

Chandler was employed by La Quinta as a general manager. Initially, she worked at its Bossier City property for about six months. Thereafter, she became the manager of the Shreveport La Quinta. [Doc. No. 22, Ex. 1, p. 61]. Her immediate supervisor was Rob Cowan, the Regional Vice-President over Region 10. [Doc. No. 24, Ex. 1, pp. 5-6].

In December 2004, Chandler applied for and received a medical leave of absence. [Doc. No. 22, Ex. 16]. Before going on leave, Chandler assigned various employees to perform the necessary duties at the Shreveport property during her absence and gave Cowan a memo detailing those assignments. [Id., pp. 85-86]. Cowan testified that

Chandler told him that everything should be fine at the hotel while she was away. [Id., Ex. 14, p. 106].

La Quinta's corporate audit department schedules random audits of its properties to point out issues a hotel may not be aware of or to affirm the areas in which the hotel is doing well. [Id., Ex. 1, pp. 80-81]. During Chandler's FMLA leave, a random audit of the Shreveport La Quinta was conducted. The facility failed the audit, received a score of 42.6 out of a possible 100. [Id., Ex. 17]. Some of the deficiencies found in the audit can be attributed to Chandler's performance before her leave commenced, while some of the deficiencies arose during her absence and were beyond her control.

Company policy requires a re-audit when an initial audit is failed. [Id., Ex. 14, p. 12]. While Cowan claims that the average of the two audits generally must total 70% [Id.], Chandler denies that such a policy exists. Regardless, when Chandler returned from FMLA leave and learned of the audit failure, she was told that she would have to score a 90% or above on the next audit or suffer disciplinary action. [Id., Ex. 18]. Cowan claims he lowered the score needed on the re-audit from 98% (which would have been needed to average 70%) to 90% in an attempt to accommodate Chandler. [Id., Ex. 14, pp. 20-21]. Again, Chandler denies that such a policy ever existed.

Upon returning from FMLA leave, Chandler began to work on correcting the audit deficiencies. On March 12, 2005, she e-mailed Cowan concerning how the deficiencies were being addressed. [Id., Ex. 1, pp. 106-107]. Chandler admits that although Cowan offered to come by the property to help her or to send another manager over to help, she never requested any help. [Id., pp. 110-111].

Chandler submitted her resignation on or about March 25, 2005. [Id., Ex. 19]. Chandler claims that she decided to resign after being told by two employees that Charles

Johnson had said she was at the "funny farm" while on medical leave. [Id., Ex. 1, p. 120]. Chandler admits that she also told some co-workers that she was leaving because she was offered a better job in New Orleans. [Id., pp. 137-138]. Two months after she resigned, she moved to Pass Christian, Mississippi to be closer to New Orleans. [Id., p. 138]. Her lawsuit alleges that she resigned because of the impossible goals placed upon her and because she faced certain termination.

## LAW AND ANALYSIS

### I. Summary Judgment Standard.

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. Liquid Air Corp., 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. Liquid Air Corp., 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. 317, 106 S.Ct. 2548. To that end, the Court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Ameristar Jet Charter v. Signal Composites, 271 F.3d 624, 626

(5th Cir. 2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. Liquid Air Corp., 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Id. Therefore, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993); see generally Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

With these principles in mind, we now turn to a review of the claims at issue in the instant case.

## II.     Plaintiff's Evidentiary Objections

Although failing to file a motion to strike, Chandler makes several objections to evidence submitted by La Quinta. First, Chandler objects to evidence submitted concerning her medical condition as irrelevant to her FMLA claims. However, those facts were relevant to the invasion of privacy claims which were at issue until Chandler failed to oppose La Quinta's motion for summary judgment concerning those claims. Nevertheless, the Court agrees that Chandler's medical issues are not relevant to her FMLA claim, and such information was not considered by the Court in assessing the merits of that claim.

Chandler also objects to the inclusion of La Quinta's sexual harassment policy as Ex. 23 to defendant's motion for summary judgment on the grounds of relevance. Since that policy is not relevant to the Court's ruling, the objection is moot. Finally, Chandler objects to defendants' Exhibits 2 through 13, which consist of affidavits signed by

employees of the La Quinta hotel in Shreveport. These affidavits were not considered by the Court, are not material to the instant ruling, and the objection is therefore moot.

### III.     Retaliation Under the FMLA.

To make a *prima facie* showing of retaliation under the FMLA, plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave.  Hunt v. Rapides Healthcare System, 277 F.3d 757, 768 (5th Cir. 2002)**.** If plaintiff succeeds in making a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employment action.  Id.  Once the defendant has done so, plaintiff must show by a preponderance of the evidence that the defendant's reason is a pretext for retaliation.  Id.

Chandler's lawsuit claims that "[f]aced with goals that were virtually impossible to achieve and almost certain termination," she resigned her employment. [Doc. No. 1-1 at ¶ 12]. Accordingly, she claims she was constructively discharged.[1]  A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign.  See Hunt v. Rapides Healthcare System, LLC,  277 F.3d 757 (5th Cir. 2001).  Courts consider a variety of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early

---

[1] Chandler also claims that the "90 or better" policy for audits was discriminatory. However, she has failed to submit any competent summary judgment evidence of any discipline or punishment pursuant to that so-called policy other than her alleged constructive discharge.

retirement that would make the employee worse off whether the offer was accepted or not. Id. at 771-772 (*citing* Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir.1994)). The test is objective. The question is not whether Chandler felt compelled to resign, but whether a reasonable employee in her situation would have felt so compelled. Barrow, 10F.3d at 297 n.19 (citations omitted).

Chandler does not allege that she was demoted, that her salary or job responsibilities were reduced, that she was reassigned, or that she was harassed. Rather, she claims that she resigned because of the "impossible" goals placed upon her and because she faced "certain termination." However, the threat of potential termination is not sufficient to constitute a constructive discharge. "[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination." Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir.1995). The threat of termination cannot compel a person to resign because an employee has a choice of resigning or standing and fighting the threatened termination. Id. See also Spence v. Maryland Casualty Co., 995 F.2d 1147, 1156 (2d Cir.1993)(allegations that employer intentionally criticized employee's job performance and made conditional threats of termination if performance did not improve is not sufficient); Ginn v. Tex. Wired Music, Inc., 2000 WL 33348246 (W.D. Tex. 2000)(allegations of severe criticism and threats of termination not sufficient).

Chandler claims that the goal of a 90% on the audit was impossible. However, she admits that she was addressing the deficiencies and never requested any assistance from the other managers. Chandler does not know what the second audit score would have been nor does she know whether La Quinta would have actually terminated her following another failed audit. Instead of following through with the second audit, she choose to resign and thereby preempt a possible ultimate employment action. Chandler's resignation

under these factual circumstances is not an actionable employment action . See Mowbray v. American General Life Ins. Cos., 162 Fed. Appx. 369, 374 (5th Cir. 2006)(unpublished opinion); Veal v. Schlumberger Tech. Corp., 2006 WL 237006 (S.D. Tex. 2006). The Court finds that plaintiff has failed to establish a constructive discharge.

The parties largely dispute who is to blame for the deficiencies revealed in the audit. Defendant blames plaintiff and her alleged lack of adequate employee training. Plaintiff blames the regional manager who was in charge of the property during her absence. However, the issue of fault is immaterial to the motion for summary judgment, since no one was ever disciplined for the deficient audit. Had Chandler failed the second audit and been terminated in part because of performance deficiencies beyond her control which occurred while she was on approved FMLA leave, then the Court's ruling might be different. However, she instead chose to resign before any adverse employment actions could be taken.[2]

Even if Chandler could establish an actionable adverse employment action, she cannot show that a similarly-situated person who did not take protected leave was treated more favorably than she was treated. Although she complains that Cowan was responsible for the audit and should have been disciplined for the deficiencies, she is not similarly-situated to Cowan since he was the regional manager and her supervisor. The fact that the two had different levels of responsibility preclude a finding that they were similarly-situated. See Okoye v. University of Texas Houston Health Science Center, 245 F.3d 507 (5th Cir. 2001); Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th

---

[2]The Court is well aware of the United State Supreme Court's ruling in Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006), which arguably lowered the bar for actionable retaliation claims. However, the Court finds that Chandler's allegations still do not rise to the level of actionable retaliation.

Cir.1991). Further, Chandler cannot complain that Cowan was treated more favorably because he was not disciplined for the deficient audit since she was not disciplined for it either.

Under these circumstances, the Court finds that there is no genuine issue of fact and that summary judgment is appropriate as a matter of fact and law.

## CONCLUSION

Plaintiff has failed to show that she was subjected to any adverse employment actions or that she was constructively discharged. Plaintiff has also failed to show that a similarly-situated person who did not take protected leave was treated more favorably. Accordingly, the Court finds that Plaintiff cannot establish a *prima facie* claim pursuant to the FMLA as a matter of fact and law. Plaintiff did not oppose summary judgment on the remaining claims. Accordingly, summary judgment is granted as to those claims as well.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment [Doc. No. 22] is hereby **GRANTED**, and that Plaintiff's claims are hereby **DISMISSED**, with prejudice, at her sole cost.

**IT IS FURTHER ORDERED** that the pending Motion in Limine [Doc. No. 26] is hereby **DENIED AS MOOT**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 11th day of April, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE